1  Jack Silver, Esq. SB #160575
   Email: JsilverEnvironmental@gmail.com
2  LAW OFFICE OF JACK SILVER
   Jerry Bernhaut, Esq. SB #206264
3  Email: j3bernhaut@gmail.com
   708 Gravenstein Hwy. No. # 407
4  Sebastopol, CA 95472
   Tel. (707) 528-8175
5
   Attorneys for Plaintiff
6  CALIFORNIA RIVER WATCH

7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10 CALIFORNIA RIVER WATCH, an          Case No.: 3:19-cv-05399
   IRC § 501(c)(3) non-profit, public benefit
11 corporation,                        **COMPLAINT FOR INJUNCTIVE
                                        RELIEF, CIVIL PENALTIES, AND
12            Plaintiff,                DECLARATORY RELIEF**

13       v.                            **(Environmental – Clean Water Act
                                        33 U.S.C. § 1251 *et seq.*)**
14 ESTATE OF ROSE MARY MOORE,
   NAPA COUNTY PUBLIC
15 ADMINISTRATOR, NAPA COUNTY
   PUBLIC GUARDIAN, and COUNTY OF
16 NAPA,

17            Defendants.
                                    /

18       Plaintiff CALIFORNIA RIVER WATCH ("RIVER WATCH") hereby brings this civil

19 action pursuant to the Federal Water Pollution Control Act, also known as the Clean Water Act

20 ("CWA"), 33 U.S.C. §§ 1251 *et seq.*

21 **I.     INTRODUCTION**

22 1.      This action is a citizen suit for injunctive relief, civil penalties, and remediation brought

23 against Defendants ESTATE OF ROSE MARY MOORE, NAPA COUNTY PUBLIC

24 ADMINISTRATOR, NAPA COUNTY PUBLIC GUARDIAN, AND COUNTY OF NAPA, for

25 routinely violating "an effluent standard or limitation Under this Act"[1] and an order issued by

26

27       [1]See CWA § 505(a)(1)(A), 33 U.S.C. 1365(a)(1)(A).  "[A]ny citizen may commence a
   civil action on his own behalf against any person . . . who is alleged to be in violation of (A) an
28 effluent standard or limitation under this Act.

                                        1

1   the State with respect to an effluent quality standard or limitation by discharging a pollutant from

2   a point source to a water of the United States without complying with any other sections of the

3   Act including CWA § 402, 33 U.S.C. § 1342.

4   2.      On or about June 17, 2019, RIVER WATCH provided notice of Defendants' violations

5   of the CWA to the (1) Administrator of the United States Environmental Protection Agency

6   ("EPA"), (2) EPA's Regional Administrator for Region Nine, (3) Executive Director of the State

7   Water Resources Control Board ("State Board"), and (4) Defendants, as required by the CWA,

8   33 U.S.C. § 1365(b)(1)(A).  A true and correct copy of RIVER WATCH's 60-Day Notice of

9   Violations ("Notice") is attached as **EXHIBIT A** and incorporated by reference. Defendants, the

10  State Board, the Regional and National Administrators of EPA all received this Notice.

11  3.      More than sixty days have passed since RIVER WATCH's Notice was served on

12  Defendants, the State Board, and the Regional and National EPA Administrators. RIVER

13  WATCH is informed and believes, and thereupon alleges, that neither the EPA nor the State of

14  California has commenced or is diligently prosecuting a court action to redress the violations

15  alleged in this Complaint. This action's claim for civil penalties is not barred by any prior

16  administrative penalty under CWA § 309(g), 33 U.S.C. § 1319(g).

17  4.      Defendant, Estate of Rose Mary Moore, is the owner of a sewage collection, treatment,

18  and storage facility and system (the "Facility") identified by the Regional Water Quality Control

19  Board, San Francisco Bay Region ("RWQCB-SF") in WDR Order 86-028 as Moore's Resort,

20  located at 6 Cuttings Wharf Road in the City of Napa, California. The real property underlying

21  the Facility is identified by County of Napa Assessor's Parcel Number 047-262-002-000.

22  Defendant, Napa County Public Administrator is the Administrator of the Estate of Rose Mary

23  Moore.  Defendant Napa County Public Guardian is the guardian of the Estate of Rose Mary

24  Moore. RIVER WATCH alleges Defendant Estate of Rose Mary Moore, as owner and prior

25  operator of the Facility, and Defendants Napa County Public Administrator, Napa County Public

26  Guardian, and the County of Napa collectively, as current operators of the Facility, illegally

27  discharge pollutants from the Facility to the Napa River and adjacent wetlands and drainages,

28

all waters of the United States, in violation of CWA § 301(a), 33 U.S.C. § 1311(a) which states in relevant part: "Except as in compliance with this section and sections 302, 306, 307, 318, 402, and 404 of this Act [33 U.S.C. §§ 1312, 1316, 1317, 1328, 1342, 1344], the discharge of any pollutant by any person shall be unlawful."

## II.   JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), and 33 U.S.C.§ 1365(a) (CWA citizen suit jurisdiction). The relief requested is authorized pursuant to 28 U.S.C. §§ 2201-2202 (declaratory relief), 33 U.S.C. § 1365(a) (injunctive relief), and 33 U.S.C. § 1319(d) (civil penalties).

6.      Venue is proper because Defendants and the Facility are located in, and the events or omissions giving rise to RIVER WATCH's claims occurred, in this District. 28 U.S.C. § 1391(b)(1),(2). Venue is also proper because Defendants' CWA violations as alleged in this Complaint have occurred and are occurring within the District. 33 U.S.C. § 1365(c)(1).

## III.   PARTIES TO THE ACTION

7.      RIVER WATCH, is now, and at all times relevant to this Complaint was, an Internal Revenue Code § 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California with headquarters located in Sebastopol, California and a mailing address of 290 South Main Street, #817, Sebastopol, California.  RIVER WATCH is dedicated to protecting, enhancing, and helping to restore surface water and groundwaters of California including coastal waters, rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna, and educating the public concerning environmental issues associated with these environs.  Members of RIVER WATCH have interests in the waters and watersheds which are or may be adversely affected by Defendants' violations of the CWA as alleged in this Complaint.  Said members use or intend to use the effected waters and watershed areas for recreation, sports, fishing, swimming, hiking, photography and nature walks.  Members and supporters of RIVER WATCH reside in the vicinity of, own property near, and/or recreate on, in or near, and/or otherwise use, enjoy and benefit from the waterways and associated natural

Complaint for Injunctive Relief, Civil Penalties, And Declaratory Relief

resources into which Defendants allegedly discharges pollutants, or by which Defendants' operations adversely affect those members' interests, in violation of the protections embedded in the CWA.  The health, economic, recreational, aesthetic and environmental interests of RIVER WATCH and its members may be, have been, are being, and will continue to be adversely affected by Defendants' unlawful violations of the CWA as alleged herein. Defendants' ongoing violations of the CWA will cause irreparable harm to members of RIVER WATCH for which harm they have no plain, speedy, or adequate remedy. The relief requested will redress the ongoing injury in fact to members of RIVER WATCH.

8.      RIVER WATCH is informed and believes, and on such information and belief alleges, that Defendant Napa County Public Administrator, is now, and at all times relevant to this Complaint was, the administrator of Estate of Rose Mary Moore pursuant to Letters of Administration issued by the Napa County Superior Court on January 22, 2019 in the matter of Estate of Rose Mary Moore Case No. 19PR000020, and that the Napa County Public Administrator has assumed, under the Independent Administration of Estates Act,  authority and control over the Facility.  The office of the Napa County Public Administrator is located at 650 Imperial Way, Suite 101 in Napa, California.

9.      RIVER WATCH is informed and believes, and on such information and belief alleges, that Defendant Napa County Public Guardian, is now, and at all times relevant to this Complaint was, the guardian of the Estate of Rose Mary Moore, and initiated the probate of the Estate of Rose Mary Moore in the County of Napa, Case No. 19PR000020.  The office of the Napa County Public Guardian is located at 650 Imperial Way, Suite 101 in Napa, California.

10.     RIVER WATCH is informed and believes, and on such information and belief alleges that Defendant County of Napa  is now, and at all times relevant to this Complaint was, a County located in the State of California with offices located at 1195 Third Street, Napa, California. The County of Napa, through its Health and Human Services Department, provides the services of the Napa County Public Guardian and Napa County Public Administrator to the public.

//

Complaint for Injunctive Relief, Civil Penalties, And Declaratory Relief

## IV.    FACTUAL ALLEGATIONS

11.      RIVER WATCH takes this action to ensure compliance with the CWA which regulates the discharge of pollutants into navigable waters.  The statute is structured in such a way that all discharges of pollutants are prohibited with the exception of enumerated statutory provisions - none of which apply to Defendants.

12.      The Facility, originally installed in the late 1950's, receives waste from residential homes. The Facility is comprised of tanks, pumps, and 2 terminal percolation ponds (North and South Pond).  RIVER WATCH contends the Facility discharges pollutants including sewage, pathogens, nutrients, and other waste commonly associated with domestic discharges, to the Napa River which is CWA § 303(d) listed as impaired for nutrients, sediment and pathogens.

13.      Currently the wastewater sources to the ponds consist of approximately 10 privately owned single-family homes.  Originally the Facility served approximately some 20 single-family homes, Moore's Resort, and a restaurant.  A review of records on file with the RWQCB-SF indicates the Facility at one time included Moore's Resort, 20+ rental homes, a store/restaurant and the current 10 single- family homes. All leases for the rental homes were terminated and the occupants moved out in 2010 and 2011.  Records from the RWQCB-SF estimated sewage volume in the past to be  4,400 gallon per day.  Using data provided from the County of Napa, the current discharge rate to the Facility is estimated to be between 1,000 to 2,000 gallons per day.  Currently, no flow monitoring equipment is installed at the Facility and no flow measurements are performed.

14.      The Facility's collection system discharges to 2 Imhoff tanks which provide only minimal treatment.  The dimensions and capacity of the Imhoff tanks are uncertain. They discharge to the 2 percolation ponds which RIVER WATCH contends are impoundments within wetlands adjacent to the Napa River and drainages to the Napa River.  The ponds originally received waste from 2 separate collection systems - North and South.  The North System served the former rental housing units and the restaurant, while the South System serves the 10 +/- single-family homes.  At present, and historically, the systems are connected to and discharge into

Complaint for Injunctive Relief, Civil Penalties, And Declaratory Relief

North Pond and South Pond respectively.

15.     The Facility is located in the Napa River watershed, on the west bank of the Napa River, approximately 3 miles south of the City of Napa.  The 10 +/- current single-family dwellings are located along the southwesterly bank of a short straight dead end "boat" channel, contiguous on one end with the Napa River at the mouth of an unnamed tributary.  Records indicate boats can still enter and leave the channel with suitable high tide conditions.  The 2 percolation ponds are located on the south side of the unnamed tributary within the wetlands adjacent to the Napa River in an area which is tidally influenced. The adjacent wetlands, tidal waters, fresh waters, unnamed tributary, boat channel, and the Napa River are all waters of the United States.

16.     Records indicate the Imhoff tanks are partially submerged during the wet season.  There is a history of pipe breaks in the collection and transport system before and after the Imhoff tanks.  Soils in the area are high-shrink-swell clay resulting in seasonal ground heaving which can lead to pipe breaks.  Due to these numerous pipe breaks, sewage has been released into ditches and low parts of the Facility and surrounding property.  Treatment of these spills has included applications of bleach which is then washed into drainages and ditches which connect to the Napa River via tributaries and wetlands.

17.     During a 2011 inspection of the Facility by RWQCB-SF, the pond berms were observed to be in a state of considerable disrepair with uneven berm tops and sides, and lacking a clear stable walking path around the berm top in several places.  In several areas, the external side of the pond berms were observed to be exposed to either surface water drainage waters or tidally influenced waters.  Visible accumulation of solids was seen in North Pond resulting from the closure of all the rental properties and significantly reduced flows. There is no pond depth or freeboard gauge to determine the depth of the ponds.  Presently, the top of the solids in North Pond appear to be between 3 and 4 feet below pond berm top.  However without knowing the depth of the pond, the amount, quantity, and percent of total capacity of accumulated solids is also unknown.  Based on visual observation, North Pond appears to be full of solid waste with less than 1 foot of liquid water depth feasible.  The water level in South Pond was seen to be

between 3 and 4 feet below pond berm top. The depth of accumulated sludge in South Pond is uncertain. The RWQCB-SF surmised in 2011 that if South Pond is similar to North Pond, it may also be almost full of solids with very little actual liquid water depth (between 1 and 2 feet) available for treatment or storage. Although North Pond does not appear to be in use today, rain water forces the accumulated solid wastes/pollutants from North Pond into the adjacent wetlands via percolation. South Pond also percolates pollutants to the adjacent wetlands and clearly lacks sufficient capacity to hold all of the waste, which may explain the signs of erosion. Additionally these ponds are in constant contact with tributary groundwater flowing directly to the adjacent wetlands. As of the date of this Complaint, the pond berms remain in considerable disrepair with erosion, animal burrowing, and seepage clearly visible.

18.    RIVER WATCH contends all components of the Facility (the collection system, Imhoff tanks and ponds) are point sources under the CWA. Records on file for the Facility with the RWQCB-SF indicate the ponds are subject to flooding from storm events such as those occurring this year (2019) causing Cuttings Wharf to be partially submerged and, by reason, the ponds to be over-topped. Even during non-flood periods, the unlined ponds percolate to the Napa River. They are in contact with groundwater and are discharging via percolation to the adjacent wetlands and drainages on a daily basis. Although a waste discharge to land permit ("WDR Order No. 86-028") was issued to Moore's Resort in 1986, Defendants have not obtained a federal permit authorizing the discharge of pollutants from the Facility to a water of the United States. To be clear, although the ponds are adjacent to the wetlands, it is more precise to say that the ponds are actually impounds within the wetlands and thus they are not only point sources to, but also part of, the waters of the United States

19.    The RWQCB-SF Basin Plan identifies multiple beneficial uses for the Napa River watershed in the vicinity of the Facility including navigation, water contact recreation, non-contact water recreation, cold fresh water habitat, wildlife habitat, preservation of rare and endangered species, and fish migration and spawning. The illegal discharges by Defendants as detailed in this Complaint cause prohibited pollution by unreasonably affecting these beneficial

Complaint for Injunctive Relief, Civil Penalties, And Declaratory Relief

uses.  RIVER WATCH is understandably concerned regarding the effects of the unpermitted discharges of untreated and partially treated sewage on the Napa River, an impaired waterway, as well as the critical habitat in and around this sensitive ecosystem.

20.      All of the discharges as identified and described herein are violations of CWA § 301(a), 33 U.S.C. § 1311(a), in that they are discharges of a pollutant (sewage) from a point source (Facility, sewage collection system, treatment system and evaporation ponds) to a water of the United States without complying with any other sections of the CWA including obtaining coverage under a federal permit.  RIVER WATCH contends these violations are continuing in nature or have a likelihood of occurring in the future.

**V.      STATUTORY AND REGULATORY BACKGROUND**

21.      CWA § 301(a) prohibits discharges of pollutants or activities not authorized by, or in violation of an effluent standard or limitation or an order issued by the EPA or a State with respect to such a standard or limitation including a federal permit issued pursuant to CWA § 402, 33 U.S.C. § 1342.  Additional sets of regulations are set forth in the Basin Plan, California Toxics Rule, the Code of Federal Regulations, and other regulations promulgated by the EPA and the State Water Resources Control Board.  Sewage is specifically identified in the CWA as a pollutant. Each of the Facility's point sources discharges sewage and sewage-related pollutants including, but not limited to, bacteria, virus, and nutrients to waters of the United States.

22.      The Napa River, adjacent wetlands and drainages, as detailed in this Complaint and in the Notice, are all waters of the United States within the meaning of CWA § 502(7), 33 U.S.C. § 1362(7).

23.      The Administrator of the EPA has authorized Regional Water Quality Control Boards to issue NPDES permits, subject to specified conditions and requirements, pursuant to CWA § 402, 33 U.S.C. § 1342.

24.      Defendants are not in possession of a federal permit authorizing the discharge of pollutants from the Facility into navigable waters of the United States within the meaning of the CWA.

**VI.   VIOLATIONS**

25.    Defendants' unpermitted discharges of sewage from the Facility as detailed herein and in the Notice are violations of CWA § 301(a), 33 U.S.C. § 1311(a).

26.    The enumerated violations are detailed in the Notice, incorporated herein by reference, and below, designating the section of the CWA violated by the described activity.

**VII.   CLAIM FOR RELIEF**

**Pursuant to CWA §505(a)(1)(A), 33 U.S.C. § 1365(a)(1)(A) - Violation of an effluent standard or limitation under the Act-Discharges of a Pollutant From a Point Source to Navigable Waters of the United States not in Compliance with the Act**

27.    RIVER WATCH re-alleges and incorporates by reference the allegations of Paragraphs 1 through 26 as though fully set forth herein including all allegations in the Notice.  RIVER WATCH is informed and believes, and on such information and belief alleges, as follows:

28.    Defendants have violated and continue to violate the CWA as evidenced by the discharges of pollutants (sewage) from a point source (the Facility, sewage collection system, treatment system and evaporation ponds) to waters of the United States without a federal permit in violation of CWA § 301(a), 33 U.S.C. § 1311(a).

29.    The violations of Defendants as set forth in this Complaint are on-going and will continue after the filing of this Complaint.  RIVER WATCH alleges herein all violations which may have occurred or will occur prior to trial, but for which data may not have been available or submitted or apparent from the face of the reports or data submitted by Defendants to the RWQCB-SF. RIVER WATCH alleges that illegal discharges from the Facility occur daily.  Each day Defendants  illegally discharge is a separate violation of the CWA.

30.    RIVER WATCH avers and believes and on such belief alleges, that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, Defendants will continue to violate the CWA as well as State and Federal standards with respect to the enumerated discharges alleged herein. RIVER WATCH avers and believes, and on such belief alleges, that the relief requested in this Complaint will address the injury to RIVER

WATCH's members, prevent future injury, and protect the interests of RIVER WATCH's members, which interests are or may be adversely affected by Defendants' violations of the CWA, as well as other State and Federal standards.

**VIII.   RELIEF REQUESTED**

Wherefore, RIVER WATCH prays that the Court grant the following relief:

31.   Declare Defendants to have violated and to be in violation of the CWA.

32.   Issue an injunction ordering Defendants to immediately operate the Facility in compliance with the CWA.

33.   Order Defendants to pay civil penalties of $54,833.00 per violation/per day for their violations of the CWA.

34.   Order Defendants to pay reasonable attorneys' fees and costs of RIVER WATCH (including expert witness fees), as provided by CWA § 505(d), 33 U.S.C. § 1365(d).

35.   For such other and further relief as the court deems just and proper.


DATED: August 27, 2019              LAW OFFICE OF JACK SILVER

                                    By:     /s/ Jack Silver
                                            Jack Silver

                                    By:     /s/ Jerry Bernhaut
                                            Jerry Bernhaut

                                    Attorneys for Plaintiff
                                    CALIFORNIA RIVER WATCH

Complaint for Injunctive Relief, Civil Penalties, And Declaratory Relief